UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

ANGELA BROWN                                                      **CV**

                                       Plaintiff,                **ECF CASE**

            v.
                                                                 **COMPLAINT**

CONEY ISLAND SITE 4A-1 HOUSES, INC. AND
SEA GATE FOOD CORP D/B/A KEY FOOD

                                       Defendants.
---------------------------------------------------------------x

## <u>COMPLAINT</u>

Plaintiff Angela Brown (hereafter referred to as "plaintiff"), by counsel, Parker

Hanski LLC, as and for the Complaint in this action against Defendants Coney Island

Site 4A-1 Houses, Inc. and Sea Gate Food Corp d/b/a Key Food (together referred to as

"defendants"), hereby alleges as follows:

### <u>NATURE OF THE CLAIMS</u>

1.      This lawsuit opposes pervasive, ongoing and inexcusable disability

discrimination by the defendants.  In this action, plaintiff seeks declaratory, injunctive

and equitable relief, as well as monetary damages and attorneys' fees, costs and expenses

to redress defendants' conspiracy to deprive plaintiff of his civil rights in violation of 42

U.S.C. § 1985, Conspiracy to Interfere with Civil Rights ("42 U.S.C. § 1985") as well as

defendants' unlawful disability discrimination against plaintiff, in violation of Title III of

the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its

implementing regulations, the New York State Executive Law (the "Executive Law"), §

296, New York State Civil Rights Law, § 40, and the Administrative Code of the City

New York (the "Administrative Code"), § 8-107.   Plaintiff also alleges claims for

1

Negligence.  As explained more fully below, defendants own, lease, lease to, operate and control a place of public accommodation that violates the above-mentioned laws. Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

2.     These defendants conspired and made a financial decision to ignore the explicit legal requirements for making their place of public accommodation accessible to persons with disabilities – all in the hopes that they would never be caught.  In so doing, defendants made a calculated, but unlawful, decision that disabled customers are not worthy.  The day has come for defendants to accept responsibility.  This action seeks to right that wrong via recompensing plaintiff and making defendants' place of public accommodation fully accessible so that plaintiff can finally enjoy the full and equal opportunity that defendants provide to non-disabled customers.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1985, 42 U.S.C. § 12188 and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the conspiracy to and deprivation of plaintiff's rights under 42 U.S.C. § 1985 and the ADA.  The Court has supplemental jurisdiction over plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because defendants' acts of conspiracy and discrimination alleged herein occurred in this district and defendants' place of public accommodation that is the subject of this action is located in this district.

**PARTIES**

5.      At all times relevant to this action, plaintiff Angela Brown has been and remains currently a resident of the State and City of New York.

6.      At all times relevant to this action, plaintiff Angela Brown has been and remains a wheelchair user.  Plaintiff suffers from medical conditions that inhibit walking and restrict body motion range and movement.

7.      Defendant Coney Island Site 4A-1 Houses, Inc. owns the property located at 3485 Neptune Avenue in Kings County, New York (hereinafter referred to as "3485 Neptune Avenue").

8.      Defendant Coney Island Site 4A-1 Houses, Inc. is licensed to and does business in New York State.  Defendant Sea Gate Food Corp d/b/a Key Food is licensed to do and does business in New York State.

9.      At all relevant times, defendant Sea Gate Food Corp d/b/a Key Food operates and/or leases property located at 3485 Neptune Avenue from the defendant Coney Island Site 4A-1 Houses, Inc. (hereinafter referred to as "Key Food").

10.      Upon information and belief, Coney Island Site 4A-1 Houses, Inc. and Sea Gate Food Corp d/b/a Key Food have a written lease agreement.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

11.      Each of the defendants are public accommodations as they own, lease, lease to, control or operate a place of public accommodation, the Key Food located at 3485 Neptune Avenue, within the meaning of the ADA (42 U.S.C. § 12181 and 28

3

C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)).

12.     Key Food is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)) as it is a facility operated by a private entity as a retail establishment, and its operations affect commerce.

13.     Numerous architectural barriers exist at defendants' place of public accommodation that prevent and/or restrict access to plaintiff, a person with a disability.

14.     Upon information and belief, 3485 Neptune Avenue was designed and constructed for first possession after January 26, 1993.

15.     At some time after January 1992, Coney Island Site 4A-1 Houses, Inc. made alterations to 3485 Neptune Avenue, including areas adjacent and/or attached to 3485 Neptune Avenue.

16.     At some time after January 1992, defendant Coney Island Site 4A-1 Houses, Inc. made alterations to the Key Food premises, and to areas of 3485 Neptune Avenue related to the Key Food premises.

17.     At some time after January 1992, defendants altered the primary function areas of the Key Food and 3485 Neptune Avenue that relate to the Key Food premises.

18.     Since the effective date of § 27-292 of the Administrative Code (also known as "Local Law 58"), defendants have constructed and/or made alterations to the Key Food, and to areas of 3485 Neptune Avenue related to the Key Food premises.

19.     Within a year of commencing this action as well as within the past three years of filing this action, plaintiff attempted to and desired to access the Key Food premises.

20.     The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design ("1991 Standards") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design ("2010 Standards").

21.     The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Administrative Code § 27-292 *et. seq.*

22.     Because of defendants' failure and conspiracy not to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, plaintiff was and has been unable to enjoy equal and complete access to defendants' place of public accommodation.

23.     Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, the Administrative Code, or the Building Code of the City of New York ("BCCNY").

24.     Barriers to access that plaintiff encountered and/or which exist at the defendants' place of public accommodation include, but are not limited to, the barriers

5

identified below, and result from but are not limited to, the barriers identified below, and

result from:

I.   Defendants do not provide an accessible public entrance.  See 28 C.F.R. §
36.304(c); and 1991 Standards §§ 4.1.1(1); 4.1.3(8), 4.32, and 4.14; and 2010
Standards §§ 206.1, 206.2, 206.3, 206.2.4, 206.4; and BCCNY §§ 1101.2, 1104.1,
1103.1.

II.   The primary entrance to defendants' public accommodation is not accessible.  See
Administrative Code §§ 27-292.5(a) and 27-357(d).

III.   Defendants fail to provide an accessible route to the primary entrance from the
sidewalk and/or street.  See Administrative Code § 27-292.5(b).

IV.   Defendants do not provide an accessible route from public transportation stops,
accessible parking, public streets or sidewalks to the building entrance that
coincides with the general circulation path used by patrons to the public
accommodation thereby relegating plaintiff to a "second class citizen" entrance
and exit.  See 1991 Standards §§ 4.3.2(1), 4.1.2(1), 4.1.1(1) and 4.14.1; 2010
Standards §§ 206.1, 206.2, 206.3, 206.2.4, 206.4; and BCCNY § 1104.5.

V.   At the inaccessible public entrance, defendants do not provide and display the
International Symbol of Accessibility with the required information indicating the
location of a designated and nearest accessible entrance.  See 1991 Standards §§
4.1.6(l)(h), 4.1.3(8)(d), 4.30.1, 4.30.7, 4.30.3 and 4.30.6; 2010 Standards §§
216.6, 703.7.2.1, 703.5; and Administrative Code § 27-292.18.

VI.   Defendants have an inaccessible public entrance and fail to provide and display
the International Symbol of Accessibility at a designated accessible entrance.  See
1991 Standards §§ 4.1.2(7(c), 4.1.6(l)(h), 4.1.3(8)(d), 4.30.1, 4.30.7, 4.30.3 and
4.30.6; 2010 Standards §§ 216.6, 703.7.2.1, 703.5; and Administrative Code § 27-
292.18.

VII.   Defendants fail to provide accessible entrances in a number at least equivalent to
the number of exits required by the New York Building and Fire Codes.  See 1991
Standards §§ 4.1.3(8)(a)(ii), 4.1.3(9), 4.3.10; 2010 Standards § 207.1; and
Administrative Code §§ 27-354 and 27-365.

VIII.   Defendants fail to provide that at least 50% and/or 60% of all its public entrances
are accessible.  See 1991 Standards § 4.1.3.8(a)(i); and 2010 Standards §§
206.4.1, and 404.

IX.   Defendants fail to provide that an accessible route from the primary entrance to
the entire interior is equivalent to the route afforded to non-disabled.  See
Administrative Code § 27-292.5(b).

X. Defendants fail to provide at least two accessible door openings leading to two independent and accessible exits from the public accommodation. See Administrative Code §§ 27-365 and 27-366.

XI. The property owner defendant failed to provide an accessible entrance to the tenant defendant. See 1991 Standards § 4.1.3(a)(iii); 2010 Standards § 206.4.5, 404; Administrative Code § 27-362; and BCCNY § 1105.1.6.

XII. Defendants fail to provide that no changes in level exist inside the required minimum maneuvering clearance at the ground space in front of the public entrance door. See 1991 Standards§§ 4.37, 4.3.8, 4.5.2; and 2010 Standards §§ 305.2, 302, 304.2, 404.2.4.4.

XIII. Defendants fail to provide an accessible public entrance as the entrance from to the sidewalk is blocked by security bollards thereby forcing plaintiff to enter the property in an unsafe and humiliating manner. See 1991 Standards §§ 7.4, 4.1.2; 2010 Standards §§ 206.8, 207.1; and BCCNY § 1104.6.

XIV. Defendants fail to provide an accessible egress from the public entrance as the egress to the sidewalk is blocked by security bollards and/or theft protection barrier devices thereby forcing plaintiff to egress the property in an unsafe and humiliating manner. See 1991 Standards § 7.4, 4.1.2; 2010 Standards §§ 206.8, 207.1; and BCCNY § 1104.6.

XV. The interior space of defendants' public accommodation is not accessible and usable to the disabled plaintiff. See Administrative Code §§ 27-292.10 and 27-292.5.

XVI. Defendants fail to provide that no protruding objects exist inside the minimum required clear floor space width of the interior's accessible route. See 1991 Standards §§ 4.2.4.2, 4.4.1; and 2010 Standards §§ 307.5, 403.5.1.

XVII. Defendants fail to provide an accessible interior route of 36 inches in width in all locations available to non-disabled customers. See 1991 Standards § 4.3.3; and 2010 Standards § 403.5.1.

XVIII. Defendants fail to provide the minimum required maneuvering clearance width at the end of every obstruction or aisle from which to make a turn around the obstruction or aisle. See 1991 Standards § 4.3.3; and 2010 Standards § 403.5.2.

XIX. Defendants fail to provide that at least one of each type of sales and/or service counter is accessible and dispersed throughout its premises. See 1991 Standards § 7.2; 2010 Standards §§ 227.3, 227.1, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

XX.  Defendants fail to provide that at least one of each type of function counter is accessible and dispersed throughout its premises.  See 1991 Standards §§ 7.2, 7.3(1); 2010 Standards §§ 227.3, 904; and BCCNY §§ 1109.12, 1109.12.3.

XXI.  Defendants fail to provide a portion of the sales and/or service counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction in a manner similar to non-disabled customers.  See 1991 Standards § 7.2; 2010 Standards §§ 227.1, 227.3, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

XXII.  Defendants fail to provide the minimum number of accessible and open check out aisles.  See 1991 Standards § 7.3(1); 2010 Standards §§ 227.2, 904.3; and BCCNY § 1109.12.2.

XXIII.  Defendants fail to provide the minimum clear width for the check out aisles.  See 1991 Standards §§ 7.3(2); 4.2.1; 2010 Standards §§ 227.5, 403; and BCCNY § 110912.5.

XXIV.  Defendants fail to display an International Symbol of Accessibility sign next to the aisle number sign that is mounted above the designated accessible check out aisle counter.  See 1991 Standards §§ 7.3(3), 4.30, 4.30.7; and 2010 Standards §§ 216.11, 703.7.2.1, 904.3.

XXV.  Defendants fail to provide that the running slope of the ramp/walkway to the entrance door is no greater than the maximum permissible slope.  See 1991 Standards §§ 4.1.3(1), 4.3.7, 4.8.1, 4.8.2; and 2010 Standards § 405.2.

XXVI.  Defendants fail to provide that the cross slope of the ramp/walkway to the entrance door is no greater than the maximum permissible slope of 2%.  See 1991 Standards § 4.8.6; and 2010 Standards § 405.3.

XXVII.  Defendants have not used the least steep possible slope for the ramp/walkway. See 1991 Standards § 4.8.2; and 2010 Standards § 405.

XXVIII.  Defendants failed to provide a level landing that is sixty inches in length and of equal width to the ramp at the top and bottom of the ramp.  See 1991 Standards §§ 4.1.3(1), 4.3.7, 4.3.8 and 4.8.4; and 2010 Standards § 405.7.

XXIX.  Defendants fail to provide handrails on both sides of the ramp/walkway that has a running slope greater than 5% and rises more than 6 inches in height.  See 1991 Standards §§ 4.1.3(1) and 4.8.5; 2010 Standards §§ 403.6, 405.8, 505, 505.2.

XXX.  Defendants fail to provide handrails that are continuous from the top to the bottom of the ramp/walkway.  See 1991 Standards § 4.8.5(1); and 2010 Standards § 505.3.

XXXI.   Defendants fail to provide that handrails extend at least 12 inches beyond the top and bottom of the ramp/walkway in a parallel and rounded return.  See 1991 Standards §§ 4.8.5(2), 4.8.5(6); and 2010 Standards § 505.10.

XXXII.   Defendants fail to provide a 60-inch level landing of equal width on the ramp/walkway after each 30-inch rise in height.  See 1991 Standards §§ 4.8.2, 4.8.4; and 2010 Standards §§ 405.6, 405.7.3, 405.7.1, 405.7.2.

XXXIII.   Defendants' entrance has two doors in a series that lack 48 inches of clear floor space between them when opened.  See 1991 Standards § 4.13.7; and 2010 Standards § 404.2.6.

XXXIV.   Defendants fail to provide the minimum required number of accessible parking spaces.  See 1991 Standards §§ 4.1.2(5)(a), 4.6.1; and 2010 Standards §§ 208.1, 208.2, 502; Administrative Code 27-292.19(a); BCCNY § 1106.1.

XXXV.   Defendants fail to provide that the designated car accessible parking spaces are at least 96 inches wide of clear unobstructed space and have an adjacent access aisle that is at least 60 inches wide of clear unobstructed space.  See 1991 Standards §§ 4.6.3, 4.6.2; 2010 Standards §§ 502.2, 502.3, 502.3.1; the Administrative Code § RS 4-6.

XXXVI.   Defendants fail to provide that the car accessible parking spaces have an adjacent International Symbol of Accessibility sign designating the spaces as accessible parking spaces and mounted at the minimum required height above the ground surface.  See 1991 Standards § 4.1.2(7)(a), 4.30.7, 4.6.4; 2010 Standards §§ 502.6, 216.5, 703.7.2.1, 703.5.6; BCCNY § 1106.6.2.6; and the Administrative Code § 27-292.19(b).

XXXVII.   Defendants fail to provide the minimum required number of van accessible parking spaces with an adjacent International Symbol of Accessibility sign designating the spaces as van accessible parking spaces and mounted at least 60 inches above the ground surface.  See 1991 Standards § 4.1.2(5)(a), 4.6.1, 4.6.4; and 2010 Standards §§ 208.2.4, 216.5, 502.6, 703.7.2.1; BCCNY § 1106.5.

XXXVIII.   Defendants fail to provide that the designated van accessible parking spaces are at least 96 inches wide and have an adjacent access aisle that is at least 96 inches wide of clear unobstructed space or a 132-inch wide parking space with an adjacent access aisle of 60 inches of clear unobstructed space.  See 1991 Standards §§ 4.1.2(5)(b), 4.1.2(7)(a), 4.6.3; 2010 Standards §§ 502.2, 502.3, 502.3.1; and the Administrative Code § RS 4-6.

XXXIX.   Defendants fail to provide that the access aisle is marked with a sign reading "NO PARKING ANYTIME".  See Building Code of New York State § 1106.5; 2010 Standards § 502.3.3.

XL.   Defendants fail to provide that the designated accessible parking spaces and access aisles have slopes no greater than 2% in any direction.  See 1991 Standards § 4.6.3; and 2010 Standards §§ 502.4, 302.

XLI.   Defendants fail to provide that the accessible parking spaces are dispersed and located on the shortest accessible routes of travel to the accessible entrances.  See 1991 Standards § 4.6.2; 2010 Standards §§ 208.3, 208.3.1; and BCCNY § 1106.6.

XLII.   Defendants fail to provide an accessible route from the access aisles to the sidewalk.  See 1991 Standards § 4.7; and 2010 Standards §§ 406, 405.

XLIII.   Defendants fail to provide that the slope of the curb ramps onto the sidewalk is no greater than 8.33%.  See 1991 Standards §§ 4.7.2, 4.8.2; and 2010 Standards § 405.2.

XLIV.   Defendants fail to provide that the slopes of the flared sides of the curb ramps are no greater than 10%.  See 1991 Standards § 4.7.5; and 2010 Standards § 406.3.

25.     Upon information and belief, a full inspection of the defendants' place of public accommodation will reveal the existence of other barriers to access.

26.     Defendants' conspiracy and failure to make their place of public accommodation accessible denies plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

27.     Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures for persons with disabilities are compliant with the laws. Nor have defendants made or provided reasonable accommodations or modifications to persons with disabilities.

28.     Defendant Coney Island Site 4A-1 Houses, Inc. has failed to ensure that its lessee's place of public accommodation and the elements therein are in compliance with the 1991 Standards or the 2010 Standards; the Administrative Code, and the BCCNY including but not limited to ensuring the maintenance of accessible features.

29.     The barriers to access within defendants' place of public accommodation continue to exist.

30.     Plaintiff frequently travels to the shopping area and neighborhood where defendants' place of public accommodation is located and patronizes places in the neighborhood.

31.     Plaintiff intends to patronize the defendants' place of public accommodation several times a year after it becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY.

## FIRST CAUSE OF ACTION

### (CONSPIRACY TO DEPRIVE PLAINTIFF OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1985)

32.     Plaintiff realleges and incorporates by this reference all allegations set in this Complaint as if fully set forth herein.

33.     Upon information and belief, defendants, in whole or in part, conspired with each other and their agents, architects, engineers, designers and contractors to deprive, either directly or indirectly, plaintiff of the equal protection of the laws, and/or of equal privileges and immunities under the laws in violation of 42 U.S.C. § 1985(3).

34.     Upon information and belief, defendants/conspirators conspired to violate plaintiff's civil rights, through an agreement and/or tacit understanding, that they must not, should not, or need not, adhere to the ADA, the Executive Law, or the Administrative Code's design, construction, and/or barrier removal requirements.

35.     Upon information and belief, this conspiracy to violate plaintiff's civil rights involved: a) each of the defendants/conspirators and various third-parties

purposefully designing, operating and maintaining their public accommodation and the common areas in an inaccessible manner; b) each of the defendants/conspirators allowing the other to purposefully design and construct inaccessible premises; and c) each of the defendants/conspirators continuing to actively maintain, and thus refusing to remove, barriers to access.   These actions violate the civil rights of people with mobility related disabilities, including plaintiff, to equal access and use of places of public accommodation.

36.    Upon information and belief, through their agreements and/or tacit understanding, defendants/conspirators acted in furtherance of their conspiracy.  Among other acts, defendants/conspirators did not, and do not, enforce, and also purposefully overlook, their own explicit contractual lease provisions that require the defendants/conspirators to "comply with all federal, state and local laws", including, but not limited to antidiscrimination laws such as the ADA.

37.    Upon information and belief, Coney Island Site 4A-1 Houses, Inc. also approved Sea Gate Food Corp d/b/a Key Food's design and construction plans, including trade fixtures, despite knowing that these plans violated the ADA because they create unlawful architectural and design barriers.  Coney Island Site 4A-1 Houses, Inc. purposefully ignored these prospective ADA violations, and did not require Sea Gate Food Corp d/b/a Key Food to correct their plans so that they would comply with the ADA.  Coney Island Site 4A-1 Houses, Inc. approved the inaccessible construction and design plans, as part of an agreement and/or tacit understanding that Coney Island Site 4A-1 Houses, Inc. would not comply with the ADA, and that Coney Island Site 4A-1

Houses, Inc. would not require Sea Gate Food Corp d/b/a Key Food to comply with the ADA.

38.    Upon information and belief, Coney Island Site 4A-1 Houses, Inc. continued to approve and allow Sea Gate Food Corp d/b/a Key Food to operate their premises in an inaccessible manner; for example, by allowing Sea Gate Food Corp d/b/a Key Food to maintain architectural and design barriers, inaccessible trade fixtures and other elements in Key Food.  The defendants/conspirators do so through an agreement and/or tacit understanding to violate the anti-discrimination laws relating to architectural accessibility.

39.    Despite knowing or recklessly disregarding that their agreement and/or tacit understanding denies people with disabilities their civil rights to equal access and use of defendants' place of public accommodation, the defendants/conspirators have and continue to brazenly violate the law.

40.    Defendants have and continue to reap large profits from the harm they have inflicted upon persons with mobility related disabilities.  These unlawful profits arise from pocketing the money and interest that should have been used for accessibility, and from additional, but unlawful, square footage devoted to selling space instead of accessibility.

41.    The additional, unlawful, square footage gained through this conspiracy to deny people with disabilities of their civil rights, benefits Sea Gate Food Corp d/b/a Key Food as they have extra usable and selling space, and benefits Coney Island Site 4A-1 Houses, Inc. as they receive a higher rent, and/or a percentage of Sea Gate Food Corp

d/b/a Key Food's sales dollars as additional rent, as a result of the unlawful, excess selling space.

42.     The intentional and reprehensible conduct alleged herein against the class of people with disabilities who use wheelchairs for mobility were overt acts in furtherance of the conspiracy to purposely design, construct and maintain their premises in a manner that injures plaintiff's person and deprives plaintiff of equal rights and privileges of a citizen of the United States.  The defendants/conspirators decided to violate the laws drafted to eradicate architectural discrimination against disabled wheelchair users in order to unjustly enrich themselves by pocketing the money that should have been spent to comply with the laws, and from receiving extra revenue.  This open and obvious conspiracy must end now.

43.     As a direct and proximate result of defendants' unlawful discrimination, plaintiff has, and continues to, endure mental anguish and emotional distress, including but not limited to, humiliation, stress, anxiety, and emotional pain and suffering.

44.     Plaintiff also seeks punitive damages against the defendants because of defendants' willful and/or reckless disregard for plaintiff's rights, in an amount to be determined at trial but no less than **$50,000.00 (FIFTY THOUSAND DOLLARS).**

**SECOND CAUSE OF ACTION**
**(Violations of the Americans with Disabilities Act)**

45.     Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of plaintiff's disability, plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

46.     The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. 36.201(b).

47.     Under the ADA, both the property owner and lessee are liable to the plaintiff and neither can escape liability by transferring their obligations to the other by contract (i.e. lease agreement).  28 C.F.R. 36.201(b).

48.     Defendants have and continue to subject plaintiff to disparate treatment by denying plaintiff full and equal opportunity to use their place of public accommodation all because plaintiff is disabled.  Defendants' policies and practices have disparately impacted plaintiff as well.

49.     By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

50.     Defendants have discriminated against the plaintiff by designing and constructing a building, facility and place of public accommodation after January 26, 1993 that is not readily accessible to and usable by the disabled plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

51.     Defendants' place of public accommodation is not fully accessible and fails to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

52.     Upon making alterations to their public accommodation, defendants failed to make their place of public accommodation accessible to plaintiff to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406.

15

53.     Upon making these alterations to the primary function areas, defendants failed to make the paths of travel to the primary function areas accessible to plaintiff, in violation of 28 C.F.R. § 36.403.

54.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would be readily achievable to make defendants' place of public accommodation fully accessible.

55.     By failing to remove the barriers to access where it is readily achievable to do so, defendants have discriminated against plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

56.     In the alternative, defendants have violated the ADA by failing to provide plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

57.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

58.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, within the meaning of the ADA, Coney Island Site 4A-1 Houses, Inc. continuously controlled, managed and operated the public sidewalk abutting 3485 Neptune Avenue, which includes the portion of the sidewalk constituting the entrance to defendants' place of public accommodation.

59.    Coney Island Site 4A-1 Houses, Inc.'s failure to construct and maintain an accessible entrance from the public sidewalk to defendants' place of public accommodation constitutes disability discrimination in a violation of the ADA.

60.    Defendants have and continue to discriminate against plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

### THIRD CAUSE OF ACTION
**(Violation of New York State Executive Law)**

61.    Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

62.    Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 296(21).

63.    Defendants' have and continue to subject plaintiff to disparate treatment by denying plaintiff equal opportunity to use their place of public accommodation all because plaintiff is disabled.

64.    Defendants discriminated against plaintiff in violation of New York State Executive Law § 296(2), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the defendants have aided and abetted others in committing disability discrimination.

65.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law § 296(2)(c)(iii).

66.     In the alternative, defendants have failed to provide plaintiff with reasonable alternatives to barrier removal as required in violation of Executive Law § 296(2)(c)(iv).

67.     It would be readily achievable to make defendants' place of public accommodation fully accessible.

68.     It would not impose an undue hardship or undue burden on defendants to make their place of public accommodation fully accessible.

69.     As a direct and proximate result of defendants' unlawful discrimination in violation of New York State Executive Law, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

70.     Plaintiff has suffered damages in the amount of at least **$50,000.00** (**FIFTY THOUSAND DOLLARS**) from each defendant and the total amount shall be determined at trial.

### FOURTH CAUSE OF ACTION
**(Violation of the Administrative Code of the City of New York)**

71.     Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

72.     Plaintiff suffers from various medical conditions that separately and together, impair plaintiff's bodily systems - in particular, the life activity of both walking and body motion range -and thus plaintiff has a disability within the meaning of the Administrative Code § 8-102(16).

73.     The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to

18

the New York City's Human Rights Law.  The Restoration Act confirmed the legislative

intent to abolish "parallelism" between the Administrative Code and the Federal and New

York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 amending Administrative Code §8-130 (emphasis added). The

Restoration Act is to be construed broadly in favor of plaintiff to the fullest extent

possible.

74.     Defendants' have and continue to subject plaintiff to disparate treatment

and disparate impact by directly and indirectly refusing, withholding, and denying the

accommodations, advantages, facilities, and privileges of their place of public

accommodation all because of disability in violation of the Administrative Code § 8-

107(4).  Each of the defendants have aided and abetted others in committing disability

discrimination.

75.     Defendants have discriminated, and continue to discriminate, against

plaintiff in violation of the Administrative Code § 8-107(5)(b) by designing, creating

and/or maintaining an inaccessible commercial facility/space.

76.     Defendants have subjected, and continue to subject, plaintiff to disparate

treatment by directly and indirectly refusing, withholding, and denying the

accommodations, advantages, facilities, and privileges of their commercial facility/space

all because of disability in violation of the Administrative Code § 8-107(5)(b).

77.     In violation of Administrative Code § 8-107(6), defendants have and

continue to, aid and abet, incite, compel or coerce each other in each of the other

defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the Administrative Code.

78.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, Coney Island Site 4A-1 Houses, Inc. continuously controlled, managed and operated the public sidewalk abutting 3485 Neptune Avenue, which includes the portion of the sidewalk constituting the entrance to defendants' place of public accommodation.

79.     Coney Island Site 4A-1 Houses, Inc.'s failure to construct and maintain an accessible entrance from the public sidewalk to defendants' place of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

80.     Defendants discriminated against plaintiff in violation of the Administrative Code, § 8-107(4), and Local Law 58 by maintaining and/or creating an inaccessible public accommodation.

81.     As a direct and proximate result of defendants' unlawful discrimination in violation of the Administrative Code, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, embarrassment, and anxiety.

82. Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to plaintiff's rights under the Administrative Code.

83. By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

84. Defendants' unlawful discriminatory conduct constitutes malicious, willful and wanton violations of the Administrative Code for which plaintiff is entitled to an award of punitive damages.  Administrative Code § 8-502.

85. By refusing to make their place of public accommodation accessible, defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.  Defendants' unlawful profits plus interest must be disgorged.

86. Plaintiff has suffered damages in the amount of at least **$50,000.00** (**FIFTY THOUSAND DOLLARS**) from each defendant and the total amount shall be determined at trial.

<u>**FIFTH CAUSE OF ACTION**</u>
**(Violation of New York State Civil Rights Laws)**

87. Plaintiff realleges and incorporates by this reference all allegations set in this Complaint as if fully set forth herein.

88. Defendants discriminated against plaintiff pursuant to New York State Executive Law.

21

89.     Consequently, plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §§ 40-c and 40-d, in the amount of **$500.00 (Five Hundred Dollars)** per defendant for each and every barrier and violation.

90.     Notice of the defendants' violations and this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## SIXTH CAUSE OF ACTION

### (COMMON LAW NEGLIGENCE)

91.     Plaintiff realleges and incorporates by this reference all allegations set in this Complaint as if fully set forth herein.

92.     Defendants negligently designed, constructed, operated, repaired and maintained their place of public accommodation located at 3485 Neptune Avenue in a manner that has rendered their place of public accommodation inaccessible to the disabled plaintiff.

93.      At all relevant times, defendants have had a duty to design, construct, operate, repair, and maintain their place of public accommodation located at 3485 Neptune Avenue in a manner that is accessible to the disabled plaintiff, including a duty to comply with the Administrative Code.

94.     Defendants breached their duty by negligently designing, constructing, operating, repairing and maintaining their place of public accommodation located at 3485 Neptune Avenue in a manner that has rendered it inaccessible to the disabled plaintiff, and by violating the Administrative Code sections cited herein.

95.     Defendants' failure to design, construct, operate, repair and maintain their place of public accommodation located at 3485 Neptune Avenue in a manner that is

accessible to the disabled plaintiff has proximately caused plaintiff to be unable to enjoy full and equal access to defendants' place of public accommodation.

96.    Defendants have had actual and constructive notice that their place of public accommodation located at 3485 Neptune Avenue is not accessible to the disabled. The inaccessibility of defendants' place of public accommodation is visible, open, obvious, and apparent and has existed for a sufficient length of time for the defendants to discover and remedy the numerous inaccessibility conditions.

97.    As a direct result of defendants' negligence, plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

## INJUNCTIVE RELIEF

98.    Plaintiff will continue to experience unlawful discrimination as a result of defendants' failure to comply with the above-mentioned laws.  Therefore, injunctive relief is necessary to order defendants to alter and modify their place of public accommodation and their operations, policies, practices and procedures.

99.    Injunctive relief is also necessary to make defendants' facilities readily accessible to and usable by plaintiff in accordance with the above-mentioned laws.

100.    Injunctive relief is further necessary to order defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, Executive Law and the Administrative Code.

## DECLARATORY RELIEF

101.    Plaintiff is entitled to a declaratory judgment concerning each of the accessibility violations committed by defendants against plaintiff and as to required

alterations and modifications to defendants' place of public accommodation, facilities, goods and services, and to defendants' policies, practices, and procedures.

## ATTORNEYS' FEES, EXPENSES AND COSTS

102.    In order to enforce plaintiff's rights against the defendants, plaintiff has retained counsel and is entitled to recover attorneys' fees, expenses and costs pursuant to 42 U.S.C. § 1985, the ADA and the Administrative Code.  42 U.S.C. § 1988; 42 U.S.C. §12205; 28 C.F.R. §36.505; and Administrative Code § 8-502.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court enter a judgment against the defendants, jointly and severally, in favor of plaintiff that contains the following relief:

A. Enter declaratory judgment declaring that defendants' have violated 42 U.S.C. § 1985, the ADA and its implementing regulations, Executive Law and Administrative Code and declaring the rights of plaintiff as to defendants' place of public accommodation, and defendants' policies, practices and procedures;

B. Issue a permanent injunction ordering **defendants to close and cease all business** until defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, Executive Law and Administrative Code, including but not limited to the violations set forth above;

C. Retain jurisdiction over the defendants until the Court is satisfied that the defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D. Find defendants guilty of a class A misdemeanor for violating New York State Civil Rights Law pursuant to New York State Civil Rights Law § 40-d;

E. Award at least **$50,000.00** (**FIFTY THOUSAND DOLLARS**) to plaintiff as

Compensatory damages, per defendant, plus pre-judgment interest, as a result of

defendants' violations of 42 U.S.C. § 1985, New York State Executive Law and the

Administrative Code of the City of New York;

F. Award at least **$50,000.00** (**FIFTY THOUSAND DOLLARS**) to plaintiff as Punitive

damages, per defendant, in order to punish and deter the defendants for their violations of

42 U.S.C. § 1985 and the Administrative Code of the City of New York;

G. Award plaintiff **$500.00** (**FIVE HUNDRED DOLLARS**) for each and every barrier

and violation of the law, per defendant, pursuant to New York State Civil Rights Law §§

40-c and 40-d;

H. Award reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1985

and the Administrative Code;

I. Find that plaintiff is a prevailing party in this litigation and award reasonable attorneys'

fees, costs and expenses pursuant to 42 U.S.C. § 1985 and the ADA; and

J. For such other and further relief, at law or in equity, to which plaintiff may be justly

entitled.

Dated: February 9, 2013
      New York, New York

                  Respectfully submitted,

                  **PARKER HANSKI LLC**

                  By:_____/s/_____
                      Glen H. Parker, Esq.
                      Adam S. Hanski, Esq.
                      Attorneys for Plaintiff
                      40 Worth Street, 10th Floor
                      New York, New York 10013

Telephone: (212) 248-7400
Facsimile: (212) 248-5600
Email:ash@parkerhanski.com
Email:ghp@parkerhanski.com